IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

MAR 20 2009

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

DELBERT E. McNEIL,            )
                              )
            Plaintiff,        )
                              )
v.                            )   No. CIV 07-425-RAW-SPS
                              )
BRUCE HOWARD, et al.,         )
                              )
            Defendants.       )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's amended complaint [Docket #9], the defendants' motion [Docket #35], plaintiff's response [Docket #44], the defendants' reply [Docket #45], and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court [Docket #36], in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking monetary damages for alleged constitutional violations during his incarceration at Jim E. Hamilton Correctional Center (JEHCC) in Hodgen, Oklahoma. The 14 defendants, all JEHCC employees, are Warden Bruce Howard, Deputy Warden Mark Shipman, Mr. Spangler, Mr. Sanders, Mr. Plamer, Mr. Leatherwood, Mr. Kelly, Mr. Naylor, Mr. Steelman, Mr. Woodral, Security Chief B.J. Rowton, Mr. Pogue, Correctional Officer

Clinton, and Correctional Officer Williams.[1]

Plaintiff alleges he has a serious back injury, and he was given medical restrictions on his DOC Work/Activity/Housing Summary stating, "no prolonged sitting or standing, etc." Nonetheless, he was assigned the job of "door greeter" from September 18, 2007, through October 5, 2007, to punish him and other black inmates with such job restrictions. The job required plaintiff to sit and stand through an eight-hour shift, with only one 15-minute break. The door greeter job was created for plaintiff without consultation with his doctor, resulting in the unnecessary and wanton infliction of pain and medical indifference. The job required him to open and close the door for food service personnel bringing food trays, placing him in the perilous position of a "snitch," when he was directed to report inmates who were not wearing gray shirts.

Plaintiff complains he was forced to endure discrimination, humiliation, and degradation, when he was expected, as a door greeter, to behave as a "porch monkey," "house nigger," or "door clown," coupled with "Bo-jingling" and "Uncle Toming" for the officers. He cruelly was ordered to wave, smile, and show his teeth, while wide-eyed and happily saying, "Good morning, welcome to Cell House One." He was forced to repeat this performance 200-300 times a day, and had to ask permission to use the restroom. He claims he suffered mental stress and physical pain, along with the discriminatory message to the

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

2

black inmates that they still were in bondage and servants to the white race in power. He compares the job to that of Negro slaves who had to greet white visitors to the plantation and to open and close doors for their masters.

The special report states that during plaintiff's assignment at JEHCC, his medical restrictions were for no lifting more than 25 pounds; no work on wet or uneven surfaces, hills, or rocks; no prolonged sitting or standing; no sports; and no raking, hoeing, or mopping. Plaintiff worked on the ground crew from June 25, 2007, until August 2007, when he was reassigned as a Unit 1 cleaner. In lieu of a misconduct and because of his medical restrictions, plaintiff was assigned to be a front door greeter. His job was to open the door for staff members, such as food service workers, who approached the entrance with their hands full. He performed these duties until October 5, 2007, when Unit Manager Mark Shipman reassigned him to be an extra unit cleaner.

The defendants allege plaintiff's lawsuit must be dismissed, because he has failed to exhaust the administrative remedies available to him regarding any of the claims asserted in his amended complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."

3

*Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff. If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or to the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

The special report shows that on September 30, 2007, plaintiff filed a Request to Staff with Unit Manager Mark Shipman, complaining about his assignment as a greeter and requesting a transfer to a medical facility. The response denied plaintiff's allegation that he was assigned to the job because of his race, and stated that plaintiff would be assigned to another job within his medical restrictions. On October 12, 2007, plaintiff filed a grievance regarding the issue, and Warden Howard denied relief on October 16, 2007.

According to an affidavit by Elizabeth Clayton, Administrative Programs Officer, plaintiff attempted to file a grievance appeal, but it was untimely and was rejected on that basis on October 23, 2007. He did not file a request to submit a grievance appeal out of time. Plaintiff, therefore, failed to properly exhaust his available administrative remedies in accordance with DOC's grievance procedures.

**ACCORDINGLY,** the defendants' motion to dismiss [Docket #35] is GRANTED, and this action is, in all respects, DISMISSED for failure to exhaust administrative remedies.

**IT IS SO ORDERED** this 20th day of March 2009.

*Ronald A. White*
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**